UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT EMERSON FELIX,<br><br>          Plaintiff,<br><br> v.<br><br>STATE OF CALIFORNIA, *et al.*,<br><br>          Defendants. | Case No. 1:24-cv-00014-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS TO DISMISS THE CASE FOR FAILURE TO STATE A CLAIM WITHOUT LEAVE TO AMEND<br><br>(ECF No. 1)<br><br>AND<br><br>ORDER TO ASSIGN A DISTRICT JUDGE<br><br>OBJECTIONS, IF ANY, DUE WITHIN THIRTY DAYS |

  Plaintiff Scott Felix is a civil detainee at Department of State Hospitals, Coalinga ("DSH-Coalinga"). He is proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983 against Defendants, who are the State of California and employees at DSH-Coalinga.

  Plaintiff filed the complaint commencing this action on January 4, 2024. (ECF No. 1). Plaintiff alleges that Defendants violated his rights under Americans with Disabilities Act (ADA), Fourteenth Amendment right to have access to mental health treatment that gives him a realistic opportunity to be cured and released, and Fourteenth Amendment right to be free from punishment by making Plaintiff's conditions of confinement more restrictive than those of inmates in county jails and prisons. Plaintiff bases the entirety of his claims on the departure of

1

DSH-Coalinga policies from the Consent Agreement entered in *United States of America v. State of California, et al.*, ECF No. 3, No. CV 06–2667 (C.D. California) ("Consent Agreement"). (ECF No. 1 at 4–5). The complaint is now before this Court for screening.

The Court has reviewed Plaintiff's complaint and finds that Plaintiff fails to state any cognizable claims because the Court cannot constitutionalize the standards set forth in the Consent Agreement. Further, because deficiencies in Plaintiff's complaint cannot be cured, it would be futile to grant Plaintiff leave to amend. For these reasons, the Court recommends that Plaintiff's complaint be dismissed without leave to amend.

### I.    SCREENING REQUIREMENT

Because Plaintiff is proceeding *in forma pauperis* (ECF No. 7), the Court is required to screen Plaintiff's complaint and dismiss the case, in whole or in part, if the Court determines that it "fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B).

### II.   SUMMARY OF PLAINTIFF'S COMPLAINT

In his complaint (ECF No. 1), Plaintiff alleges as follows:

Plaintiff is "civilly detained" pursuant to the Sexually Violent Predator Act (SVPA), § 6604, at DSH-Coalinga. (*Id.* at 3.) He names as Defendants in this action the State of California; Stephanie Clendenin,[1] Director of the Department of State Hospitals, in her individual and official capacities; and Brandon Price, Executive Director at DSH-Coalinga, in his individual and official capacities. (*Id.*)

Defendants are responsible for operation of DSH-Coalinga, have a duty to provide adequate mental health treatment, and ensure that SVPA patients are afforded non-punitive conditions of confinement. (*Id.* at 4).

Plaintiff further alleges that by entering into Consent Agreement in *United States of America v. State of California, et al.*, ECF No. 3, No. CV 06–2667 (C.D. California), the State of California agreed that provision of mental health care has to be consistent with generally accepted professional standards of care. (ECF No. 1 at 4–5). DSH-Coalinga supports, services,

---

[1] Plaintiff misspells the Director's name as "Clandenin."

2

and conditions of confinement provided to detainees under SVPA "substantially depart from the generally accepted professional standards of care outlined within California's Agreement thereby exposing the individuals confined or residing there, including Plaintiff, to significant risk and to actual harm." (*Id.* at 5). Plaintiff then lists the specific "generally accepted professional standards of care within California Agreement" for which Defendants failed to "create and ensure implementation of policies, and practices." (*Id.* at 5–8).

This breach of duties results in SVPA patients, including Plaintiff, being subjected to cruel and inadequate treatment regime. (*Id.* at 8). Defendants' failure to institute policies and practices is "a carefully orchestrated ploy to 'warehouse'" SVPA residents "as opposed to treating them with a goal of giving them a realistic opportunity to be released." (*Id.*) As a direct result of these failures, Plaintiff has been subjected to experiencing prolonged emotional suffering. (*Id.* at 9).

Defendants violated Plaintiff's "Fourteenth Amendment Substantive Due Process right to be afford adequate care, treatment and conditions of confinement, consistent with generally accepted professional standards, that afforded Plaintiff a reasonable opportunity to be deemed cured and released while being civilly detained by [DSH-Coalinga] within conditions of confinement that are individualized and non-punitive." (*Id.* at 9). Defendants also violated the ADA. (*Id.* at 10).

Plaintiff seeks injunctive relief, compensatory and punitive damages, appointment of experts, that the Court order Defendants to consent, and appointment of counsel. (*Id.* at 11).

**III.    ANALYSIS OF PLAINTIFF'S COMPLAINT**

    **A.  42 U.S.C. § 1983**

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. *Graham v. Connor*, 490 U.S. 386, 393–94 (1989).

To state a claim under section 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a *person* acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988) (emphasis added); *see also Marsh v. County of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). In most cases, "person" means the same thing under § 1983 as in ordinary use. A prison is not "a person" under § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64 (1989) ("'[P]erson' as used in § 1983 likewise does not include a State."); *Allison v. California Adult Auth.*, 419 F.2d 822, 823 (9th Cir. 1969) ("[S]tate agencies which are but arms of the state government are not 'persons' for purposes of the Civil Rights Act.")

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Id.* Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. *Id.* at 1949–50.

**B. Sovereign Immunity**

As an initial matter, Plaintiff has named the State of California as a defendant in this action. The Eleventh Amendment and the doctrine of sovereign immunity "'erects a general bar against federal lawsuits brought against the state.'" *Wolfson v. Brammer*, 616 F.3d 1045, 1065–66 (9th Cir. 2010) (quoting *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003)). The Eleventh Amendment and the doctrine of sovereign immunity bars suits against state agencies as well as those where the state itself is named as a defendant. *Aholelei v. Dept of Public Safety*, 488 F.3d

1144, 1147 (9th Cir. 2007). Plaintiff may not sustain an action against the State of California for the alleged violation of his constitutional and federal law rights, regardless of the relief sought. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Shaw v. Cal. Dep't of Alcoholic Beverage Control*, 788 F.2d 600, 603 (9th Cir. 1986). Plaintiff's claims against the State of California itself are thus barred by sovereign immunity.

Plaintiff also sues Clendenin and Price in their official and individual capacities for injunctive relief and damages. "The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities." *Aholelei v. Dep't of Public Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007). An exception to the rule that state officials who are sued in their official capacities are not "persons" for purposes of Section 1983 is when they are sued in those capacities for prospective injunctive relief. When this occurs, they are "persons" for purposes of the statute. *See Doe v. Lawrence Livermore Nat. Lab'y*, 131 F.3d 836, 839 (9th Cir. 1997) (citations omitted); *Cornel v. Hawaii*, 37 F.4th 527, 531 (9th Cir. 2022) (citing *Doe*). "[A] suit for prospective injunctive relief provides a narrow, but well-established, exception to Eleventh Amendment immunity." *Doe*, 131 F.3d at 839. Plaintiff's claims for damages against Clendening and Price in their official capacities are also barred by sovereign immunity.

**C. Fourteenth Amendment Due Process**

Under the Due Process Clause of the Fourteenth Amendment, states are required to provide civilly committed individuals with access to mental health treatment that gives them a realistic opportunity to be cured and released. *Ohlinger v. Watson*, 652 F.2d 775, 778 (9th Cir. 1980)); *Sharp v. Weston*, 233 F.3d 1166, 1172 (9th Cir. 2000) (citing *Ohlinger*). "Because the purpose of confinement is not punitive, the state must also provide the civilly-committed with 'more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish.'" *Sharp*, 233 F.3d at 1172 (quoting *Youngberg v. Romeo*, 457 U.S. 307, 233 (1982)). "Lack of funds, staff or facilities cannot justify the State's failure to provide [such persons] with [the] treatment necessary for rehabilitation." *Oregon Advocacy*

*Center v. Mink*, 322 F.3d 1101, 1121 (9th Cir. 2003) (brackets in original) (quoting *Ohlinger*, 652 F.2d at 779).

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). To state a cause of action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Liberty interests may arise from the Due Process Clause itself or from state law. *Hewitt v. Helms*, 459 U.S. 460, 466–68 (1983). A state law or prison regulation creates a liberty interest if it places "substantive limitations on official discretion." *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983). Specifically, a state creates a liberty interest by both (1) establishing "'substantive predicates' to govern official decisionmaking," and (2) using "'explicitly mandatory language,' i.e., specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow." *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 462–63 (1989).

A consent decree can only create liberty interest in the same manner as a state law or a prison regulation, if it satisfies *Thompson's* two-part test. *Smith v. Sumner*, 994 F.2d 1401, 1406 (9th Cir. 1993). Specifically, "[a] consent decree . . . only creates obligations that run to the parties to the decree, and only while the decree is . . . in force." *Id.* at 1406 n.4.

The Consent Agreement cited by Plaintiff only applied to Metropolitan State Hospital and Napa State Hospital. *See* Consent Agreement at 2. The effective date of the agreement was June 1, 2006. *Id.* at 5, 90 (stating the "Effective Date" of the Consent Agreement is "the first day of the month following [May 15, 2006,] the date of execution of the agreement")). The Consent Agreement terminated 5 years after its effective date. *Id.* at 88.

In contrast, DSH-Coalinga, where Plaintiff is housed, is not one of the hospitals to which the Consent Agreement applied, and any obligations created by the Consent Agreement terminated many years ago. Therefore, Consent Agreement does not provide Plaintiff a protected liberty interest under which he can recover, and Plaintiff fails thus to state a due process claim based on his allegations that DSH-Coalinga failed to adhere to practices outlined in that decree.

Moreover, all of Plaintiff's claims are premised on substantial departure of DSH-Coalinga policies and conditions of confinement from "from the generally accepted professional standards of care outlined within California's Agreement." (ECF No. 1 at 5). Such allegations do not state a cognizable violation of Plaintiff's constitutional rights. *See Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir. 1982) (*abrogated on other grounds by Sandin v. O'Connor*, 515 U.S. 472 (1995)) ("It was error for the district judge to constitutionalize the standards of the American Medical Association and the American Public Health Association. The district judge had the power only to correct the constitutional defects that he found. A higher standard may be desirable but that responsibility is properly left to the executive and legislative branches."); *Gary H. v. Hegstrom*, 831 F.2d 1430, 1432 (9th Cir. 1987) (reversing the district court's opinion because "the wholesale adoption of various professional associations' concepts for model institutions as if they were constitutionally mandated was unwarranted").

**D. Americans with Disabilities Act**

Title II of the Americans with Disabilities Act ("ADA") provides:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.

To establish a violation of Title II of the ADA, "a plaintiff must show: (1) he is a 'qualified individual with a disability'; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." *Weinreich v. Los Angeles Cty. Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997) (alteration omitted) (quoting § 12132). The Supreme Court has held that "[s]tate prisons fall squarely within the statutory definition of 'public

entity' . . . ." *Pennsylvania Department of Corrections v. Yeskey*, 524 U.S. 206, 210 (1998) (quoting § 12131(1)(B)).

Plaintiff fails to state a claim under ADA. Plaintiff does not allege that he is a qualified individual with disability; he does not allege that he was excluded from participation in or denied the benefits of a public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and he does not allege that such exclusion, denial of benefits, or discrimination was by reason of his disability. His threadbare allegations that "Defendants are obligated to provide treatment, supports, and services . . . consistent with ADA" and that the failures to enact policies he enumerated in his complaint violate the ADA (ECF No. 1 at 4, 10) are too vague and conclusory to meet the pleading standard. *Iqbal*, 556 U.S. at 678.

### IV.    CONCLUSION AND ORDER

The Court finds that Plaintiff's complaint fails to state any cognizable claims.

Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, "the court should freely give leave [to amend] when justice so requires." However, the Court has discretion to deny leave to amend if "it determines that the pleading could not possibly be cured by the allegation of other facts" or is otherwise futile. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000); *AmeriSourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006). *Id.* at 1432–33. Given that the Court may consider only whether Plaintiff established that his mental health treatment at DSH-Coalinga and conditions of confinement fell below *constitutional* standards, not whether they fell below *professional* standards, Plaintiff's allegations that DSH-Coalinga violates standards set forth in the Consent Agreement cannot be cured by amendment, and leave to amend would be futile.  The Court thus does not recommend giving Plaintiff leave to amend.

Accordingly, it is **ORDERED** that:

1. The Clerk of Court is directed to assign a district judge to this case;

It is further **RECOMMENDED**:

1. Plaintiff's complaint (ECF No. 1) be dismissed, with prejudice, for failure to state a claim;
2. The Clerk of Court be directed to close this case.

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within thirty days after being served with these findings and recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **March 25, 2024**              /s/ Erica P. Grosjean
                                       UNITED STATES MAGISTRATE JUDGE